UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JESSE HELTON; ALISHA PICCIRILLO; CHAD LOWE; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FACTOR 5, INC.; FACTOR 5, LLC; BLUHARVEST, LLC; WHITEHARVEST, LLC; JULIAN EGGEBRECHT; HOLGER SCHMIDT; THOMAS ENGEL; and DOES 1-100,<br><br>Defendants. | Case No: C 10-04927 SBA<br><br>**ORDER GRANTING MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION UNDER THE FLSA**<br><br>Docket 34. |

Jesse Helton, Alisha Piccirillo, and Chad Lowe (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, brought the instant action to recover unpaid wages and other benefits under state and federal law. See First Amended Complaint ("FAC"), Dkt. 1, Exh. H. As party-defendants, the FAC names corporate defendants Factor 5, Inc. and Factor 5, LLC (collectively, "Factor 5"), as well as BluHarvest, LLC and WhiteHarvest, LLC. Id. The FAC also names individual defendants Julian Eggebrecht, Holger Schmidt, and Thomas Engel (the "individual Defendants"). Id.

The parties are presently before the Court on Plaintiffs' motion for conditional certification of a collective action for alleged violations of the overtime and minimum wage requirements of the Fair Labor Standards Act ("FLSA"). Dkt. 34. The individual Defendants oppose the motion. Dkt. 65. Having read and considered the papers filed in connection with this matter, and being fully informed, the Court hereby GRANTS Plaintiffs' motion for conditional certification of a collective action under the FLSA, for the

reasons stated below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. Factual Background

Factor 5 was a successful, independent software and video game developer, which has developed a number of video games, including *Lair* and the *Star Wars Rogue Squadron* games.  FAC ¶ 18.  Through its work, Factor 5 developed a considerable amount of valuable intellectual property, including the source code, engines, and machines used and developed as part of its business.  Id.

Factor 5 developed video games for publishers who then published the game to the consumer.  FAC ¶ 9.  Factor 5 also developed middleware tools that were used by other companies.  Id.  WhiteHarvest, LLC ("WhiteHarvest") is a software videogame developer.  Id. ¶ 10.  Individual Defendants were officers and/or directors of Factor 5 and owners of Factor 5.  Id. ¶ 11.

Plaintiff Jesse Helton was employed by Factor 5 as a Senior/Lead Programmer from on or about May 15, 2006 until on or about December 19, 2008.  FAC ¶ 6.  He was responsible for writing code to implement game features, as well as working with designers and other content creators to define features, requirements, and workflow.  Id.  Plaintiff Chad Lowe was employed by Factor 5 as a Producer from on or about December 24, 2005 until on or about December 19, 2008.  Id. ¶ 7.  He was responsible for overall project management for Factor 5's game title/project, including supervising and tracking assignments.  Id.  Plaintiff Alisha Piccirillo was employed by Factor 5 as a Senior Technical Artist from in or about August 2002 until on or about December 19, 2008.  Id. ¶ 8.  She worked with designers, programmers, and artists, to ensure technical integrity of game assets being produced by Factor 5.  Id.

On or about November 1, 2008, Factor 5 stopped paying their employees, although Plaintiffs continued to perform work for Factor 5.  FAC ¶ 19.  On or about December 1, 2008, Plaintiffs lost their health benefits due to Factor 5's failure to pay premiums.  Id. ¶ 20.

Before closing, Factor 5 had a number of assets, including valuable intellectual property assets which it had developed over a number of years, including a number of video games that were in progress, which Factor 5 believed would generate millions of dollars in revenue. Id. ¶ 21.

On December 11, 2008, individual Defendant Julian Eggebrecht ("Eggebrecht") executed an Asset Purchase Agreement, selling virtually all of Factor 5's assets to WhiteHarvest, which had been formed two days earlier, on December 9, 2008 by Eggebrecht's girlfriend and co-owner of their home, Katja Reitemeier ("Reitemeyer").[1] FAC ¶ 22. According to Plaintiffs, no money exchanged hands. Id. WhiteHarvest operated from December 9, 2008 until on or about July 31, 2009. Id. ¶ 28 at 6.[2]

Plaintiffs claim that after closing Factor 5 and terminating its employees, Factor 5 improperly took and fraudulently conveyed assets 5 to WhiteHarvest, Reitemeyer, and Factor 5 Gmbh in order to continue the Factor 5 business while attempting to avoid paying Plaintiffs and other employees of Factor 5. FAC ¶¶ 25-26 at 6. Plaintiffs further claim that Factor 5 fraudulently conveyed intellectual property and other assets owned by Factor 5, and are improperly using that intellectual property, including source codes, engines, and machines developed by Factor 5. Id. ¶ 27 at 6. According to Plaintiffs, Factor 5 also failed to: pay Plaintiffs and other employees their accrued but unused vacation time at the time of termination; provide Plaintiffs and other employees with proper notice concerning Factor 5's mass layoff pursuant to the California WARN Act; and pay Plaintiffs earned overtime wages from on or about November 1, 2008 through December 19, 2008. Id. ¶¶ 26-28 at 5.

---

[1] The FAC refers to this person as Katja "Reitemeier," Katja "Reitemeyer," and Katja "Reitmeyer." For purposes of clarity and consistency, the Court will refer to her as Reitemeyer.

[2] The Court notes that the FAC contains a typographical error regarding the numbering of the paragraphs. The last paragraph on page five of the FAC is numbered 28, while the first paragraph on page 6 is numbered 25. As such, both page five and six of the FAC contain paragraphs numbered 25-28. For purposes of clarity, when citing to these paragraphs, the Court will identify the page number on which the duplicative paragraph number appears.

Plaintiffs assert that the individual Defendants continue to operate Factor 5 businesses through Factor 5 Gmbh, and that Factor 5 Gmbh and Factor 5 are effectively the same company operated by the individual Defendants. FAC ¶ 28 at 6. Plaintiffs further assert that the individual Defendants orchestrated the fraudulent conveyances to, in large part, defraud creditors, including Plaintiffs. Id. While ostensibly owned by others, Plaintiffs maintain that the individual Defendants controlled and directed the day-to-day operations and business of WhiteHarvest, and control the day-to-day operations and business of Factor 5 Gmbh. Id. ¶ 29.

### B. Procedural Background

On January 21, 2009, Plaintiffs filed a class action complaint in the Marin County Superior Court to recover earned wages and other benefits due under California law. Compl., Dkt. 1, Exh. A. The complaint was amended to include corporate Defendants BluHarvest, LLC, which was later renamed WhiteHarvest. See Dkt. 1, Exh. C. Factor 5, Inc. filed for bankruptcy in May 2009, and a year later in May 2010, WhiteHarvest filed for bankruptcy. See id. Proceedings in the state court were stayed as to Factor 5, Inc. and WhiteHarvest. See id.

On October 13, 2010, following the close of both entities' bankruptcy proceedings, Plaintiffs filed an amended complaint adding the individual Defendants and claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216. See FAC. On October 29, 2010, the individual Defendants removed the action to this Court on the basis of federal question jurisdiction. Notice of Removal, Dkt. 1.

The FAC alleges eleven causes of action as follows: (1) violation of California Labor Code §§ 204, 206, failure to pay all earned wages accrued during a pay period; (2) violation of California Labor Code § 201, failure to pay compensation upon discharge; (3) violation of California Labor Code § 227.3, failure to pay unused vacation compensation; (4) violation of California Labor Code § 2802, failure to pay for all necessary expenditures or losses incurred by the employee in the discharge of his or her duties; (5) violation of California Labor Code § 1401, et seq., failure to give proper notice of the cessation of

- 4 -

operations or to pay 60 days salary in lieu of notice; (6) violation of 29 U.S.C. § 206, FLSA minimum wage violation; (7) violation of 29 U.S.C. § 207, FLSA overtime violation; (8) breach of contract; (9) unfair business practices in violation of the Cal. Business and Professions Code, 17200, et seq.; (10) fraudulent conveyance; and (11) accounting. See FAC.

On October 26, 2011, Plaintiffs filed a motion for conditional certification of a collective action under the FLSA. Dkt. 34. The individual Defendants filed an opposition on February 2, 2012. Dkt. 65. On February 16, 2012, a reply was filed. Dkt. 75.

## II. DISCUSSION

### A. Motion for Conditional Certification

Plaintiffs seek conditional certification of a collective action for alleged violations of the minimum wage and overtime requirements of the FLSA. Plaintiffs propose conditional certification of an opt-in class consisting of all persons that worked for Factor 5 in California during the period November 1, 2008 to December 19, 2008.

Under the FLSA, employers must pay their employees a minimum wage and overtime wages. See 29 U.S.C. §§ 206, 207. If an employer fails to do so, an aggrieved employee may bring a collective action on behalf of "similarly situated" employees based on their employer's alleged violations of the FLSA. Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000). Determining whether a collective action is appropriate is within the discretion of the district court. Adams v. Inter-Con Sec. Sys., 242 F.R.D. 530, 535 (N.D. Cal. 2007) (citing Leuthold v. Destination America, Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004)). The plaintiff bears the burden of showing that the putative collective action members are "similarly situated." Adams, 242 F.R.D. at 535-536; Leuthold, 224 F.R.D. at 466.

Neither the FLSA nor the Ninth Circuit have defined "similarly situated." Adams, 242 F.R.D. at 536; Leuthold, 224 F.R.D. at 466. However, the majority of courts have adopted a two-step approach for determining whether plaintiffs are "similarly situated." See, e.g., Harris v. Vector Marketing Corp., 716 F.Supp.2d 835, 837 (N.D. Cal. 2010); In re

Wells Fargo Home Mortg. Overtime Pay Litigation, 527 F.Supp.2d at 1070 (N.D. Cal. 2007); Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102-1103 (10th Cir. 2001); Hipp v. Liberty Nat. Life. Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001); Mooney v. Aramco Serv. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

Under the two-tiered approach, a district court first determines, based on the submitted pleadings and affidavits, whether the proposed class should be notified of the action. Adams, 242 F.R.D. at 536. At the first tier, the determination of whether the putative class members will be "similarly situated" is made using a fairly lenient standard, and typically results in conditional certification of a representative class. Id. At the second tier, the party opposing the certification may move to decertify the class once discovery is complete and the case is ready to be tried. Id.

Here, because Plaintiffs move for conditional certification, the question is whether Plaintiffs have demonstrated that the first tier has been met. At this juncture, district courts have held that conditional certification requires only that " 'plaintiffs make substantial allegations that the putative class members were subject to a single illegal policy, plan or decision.' " Adams, 242 F.R.D. at 536 (citing Leuthold, 224 F.R.D. at 468). "Under this lenient standard, 'the plaintiffs must show that there is some factual basis beyond the mere averments in their complaint for the class allegations.' " Adams, 242 F.R.D. at 536; see also Leuthold, 224 F.R.D. at 468 (at the first tier of the analysis, courts usually rely only on the pleadings and any affidavits that have been submitted). "All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." Gerlach v. Wells Fargo & Co., 2006 WL 824652, at *2 (N.D. Cal. 2006) (Wilkin, J.).

A plaintiff need not submit a large number of declarations or affidavits to satisfy the lenient standard under the first tier of the analysis. Indeed, a handful of declarations may suffice. See, e.g., Gilbert v. Citigroup, Inc., 2009 WL 424320, at *2 (N.D. Cal. 2009)

1  (finding lenient standard met based on declarations from plaintiff and four other
2  individuals); Escobar v. Whiteside Constr. Corp., 2008 WL 3915715, at *3-4 (N.D. Cal.
3  2008) (finding lenient standard satisfied based on declarations from three plaintiffs);
4  Leuthold, 224 F.R.D. at 468-469 (finding lenient standard met based on affidavits from
5  three proposed lead plaintiffs).
6       Here, Plaintiffs allege that "FLSA Class" members, i.e., employees of Factor 5, were
7  subject to the same pay practices, procedures, protocols and plans.  FAC ¶ 31.  Specifically,
8  Plaintiffs allege that from November 1, 2008 to December 19, 2008 Factor 5 willfully
9  failed to pay employees earned wages or paid employees less than the minimum wage set
10 forth in the FLSA, and/or did not pay employees overtime compensation for work that
11 lasted over 40 hours in a week in violation of the FLSA.  FAC ¶¶ 24-26, 28, 31-32.  In
12 support of these allegations, each of the named Plaintiffs has submitted a declaration.  See
13 Dkt. 36, 37, 38.  In their respective declarations, Plaintiffs aver that they worked nearly two
14 months without pay based on assurances from the owners of Factor 5 (i.e., the individual
15 Defendants) that they would be paid, and that they have never been paid earned wages for
16 November and December 2008, including minimum wage payments, compensation for
17 overtime, payment at termination (including accrued, but unused vacation wages), and
18 expense reimbursement for expenses incurred in connection with work for Factor 5.  Helton
19 Decl. ¶¶ 3, 5-7; Piccirillo Decl. ¶¶ 3-5; Lowe Decl. ¶¶ 4-7.
20      The Court finds that Plaintiffs have shown that there is a factual basis beyond the
21 allegations in the FAC to substantiate the allegations stated therein.  Plaintiffs have
22 submitted three declarations from Factor 5 employees, which aver that the proposed
23 plaintiffs were all subject to an illegal policy, plan or decision; namely, the individual
24 Defendants decision to stop paying Factor 5 employees earned wages in November and
25 December 2008.  The Court finds that the declarations submitted by Plaintiffs show that a
26 factual and legal nexus binds together the FLSA claims of the potential plaintiffs in a way
27 that hearing the claims together promotes judicial efficiency and comports with the broad
28 remedial policies underlying the FLSA.  As such, Plaintiffs have shown that the putative

collective action members are "similarly situated" for purposes of conditional certification. Based upon this showing, the Court concludes that Plaintiffs have satisfied the "fairly lenient" standard required for conditional certification of a collective action under the FLSA.  See Escobar, 2008 WL 3915715, at *3 (finding conditional certification warranted based on allegations in complaint and statements in three declarations); Leuthold, 224 F.R.D. at 468 (same).  Accordingly, Plaintiffs' request for conditional certification of a collective action under the FLSA is GRANTED.

The individual Defendants, for their part, advance two arguments as to why conditional certification is inappropriate.  They argue that conditional certification is not warranted because: (1) they have a complete defense to any claim for a willful violation of the FLSA (i.e., advice of counsel not to pay employees); and (2) the limitations period for a non-willful violation has long passed.  The individual Defendants, however, have not cited any authority demonstrating that it is proper for the Court to consider arguments going to the merits on a motion for conditional certification.  At the conditional certification stage, the Court's inquiry is whether the proposed plaintiffs are "similarly situated" with respect to the FLSA violations alleged in the operative pleading.  This inquiry does not include an examination of the merits of the alleged FLSA claims.  In fact, numerous courts have declined to address arguments going to the merits during the first tier of the analysis, indicating that such arguments are more appropriately considered as part of the Court's analysis in a second tier determination on a motion to decertify or a motion for summary judgment after discovery has closed.  See, e.g., Leuthold, 224 F.R.D. at 467; see also Adams, 242 F.R.D. at 542 (declining to make a determination regarding willfulness at the conditional certification stage).  Merits-based arguments are particularly inappropriate at this stage of the litigation given the parties disputes regarding discovery.  See Dkt. 48, 86, 89

**B.     Notice to Potential Collective Action Members**

In addition to determining that conditional certification is appropriate, Plaintiffs request that the Court facilitate notice of the pending action to potential plaintiffs so that

they have an opportunity to opt-in to this case. To this end, Plaintiffs request that the Court direct individual Defendants to disclose the names and contact information of the potential plaintiffs. Plaintiffs also request that the Court approve their proposed form of notice and their proposed consent to join form, and then authorize Plaintiffs to send out these Court-approved forms to potential plaintiffs.

Plaintiffs have filed a proposed form of notice that, among other things, explains: (1) the purpose of the notice; (2) the nature of the litigation; (3) how to participate in the lawsuit and the consequences thereof; (4) the consequences of not responding to the notice; and (5) how to obtain additional information. Dkt. 39. The individual Defendants have not objected to Plaintiffs' request that the Court facilitate notice to potential plaintiffs. Nor have they argued that the proposed notice or consent to join forms submitted by Plaintiffs are deficient in any way.

As previously stated, under the FLSA, an employee may bring a collective action on behalf of "similarly situated" employees based on their employer's alleged violations of the FLSA. 29 U.S.C. § 216(b); Advanced Textile Corp., 214 F.3d at 1064. Any "similarly situated" employee must give consent in writing to become a party plaintiff to the action. 29 U.S.C. § 216(b); Advanced Textile Corp., 214 F.3d at 1064.[3] To facilitate this process, a district court may authorize the named plaintiffs in a FLSA collective action to send notice to all potential plaintiffs, and may set a deadline for plaintiffs to join the suit by filing consents to sue. Advanced Textile Corp., 214 F.3d at 1064 (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169, 172 (1989)). The FLSA requires the court to provide potential plaintiffs "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffmann-La Roche, 493 U.S. at 170.

As for the form of notice, the Supreme Court stated in Hoffmann-La Roche that "in exercising the discretionary authority to oversee the notice-giving process, courts must be

---

[3] Potential plaintiffs who do not opt-in are not bound by the judgment and may bring a subsequent private action. Leuthold, 224 F.R.D. at 466.

scrupulous to respect judicial neutrality."  Hoffmann-La Roche, 493 U.S. at 174.  "To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."  Id.  Notice has the purpose of providing potential plaintiffs with a neutral discussion of the nature of, and their rights in, the action.  Adams, 242 F.R.D. at 540.

Having granted Plaintiffs' request for conditional certification, the Court finds that facilitation of notice to the potential plaintiffs is warranted.  The Court has reviewed Plaintiffs' proposed notice and consent to join forms and authorizes Plaintiffs to send them to all potential plaintiffs, so long as Plaintiffs make the following modifications.  First, Plaintiffs are directed to modify the proposed notice form so that it is addressed to: "All persons who worked for Factor 5, Inc. in California during the period November 1, 2008 to December 19, 2008 ("Claims Period")."  Second, the statement at the end of the proposed notice form regarding the Court's neutrality should be moved to the top of the first page below the caption.  Third, the "Effect of Joining this Suit" section of the proposed notice form should be modified to include a statement explaining that potential collective action members may share in liability for payment of costs if Defendants prevail in this action.

In order to effectuate notice, the individual Defendants are ordered to produce to Plaintiffs' counsel the names and contact information of potential plaintiffs.  Specifically, the individual Defendants shall provide Plaintiffs' counsel with each potential plaintiff's home address, e-mail address, telephone number, dates of employment, and location of employment.  See Hoffmann-La Roche, 493 U.S. at 170 (The "discovery [of names and addresses] was relevant to the subject matter of the action and . . . there were no grounds to limit the discovery under the facts and circumstances of the case.").  This information shall be provided in Microsoft Excel format and shall be provided to Plaintiffs' counsel within fourteen (14) days from the date this Order is filed.

The modified notice and consent to join forms shall be mailed within fourteen (14) days of receipt by Plaintiffs' counsel of the potential plaintiffs' contact information. Potential plaintiffs shall have sixty (60) days from the mailing of the notice and consent to

join forms to submit their consent to join forms via U.S. mail or fax to Plaintiffs' counsel, who shall promptly file all such forms with the Court. A reminder postcard shall be sent to potential plaintiffs thirty (30) days prior to the deadline for opting into the action.

### III. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' motion for conditional certification of a collective action under the FLSA is GRANTED. Plaintiffs' sixth and seventh causes of action shall proceed as a conditional collective action under § 216(b), on behalf of all persons who worked for Factor 5, Inc. in California during the period November 1, 2008 to December 19, 2008.

2. The individual Defendants shall provide, in Microsoft Excel format, the names and contact information of all potential plaintiffs to Plaintiffs' counsel within fourteen (14) days from the date this Order is filed. Specifically, the individual Defendants shall provide Plaintiffs' counsel with each potential plaintiff's home address, e-mail address, telephone number, dates of employment, and location of employment.

3. Plaintiffs shall modify the proposed notice form in compliance with this Order and submit it to the Court. The modified notice and consent to join forms shall be mailed within fourteen (14) days of receipt by Plaintiffs' counsel of the potential plaintiffs contact information. Potential plaintiffs shall have sixty (60) days from the mailing of the notice and consent to join forms to submit their consent to join forms via U.S. mail or fax to Plaintiffs' counsel, who shall promptly file all such forms with the Court. A reminder postcard shall be sent to potential plaintiffs thirty (30) days prior to the deadline for opting into the action.

4. This Order terminates Docket 34.

IT IS SO ORDERED.

Dated: 6/25/12

*Saundra B. Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge