UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JESSE HELTON; ALISHA PICCIRILLO; CHAD LOWE; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FACTOR 5, INC.; FACTOR 5, LLC; BLUHARVEST, LLC; WHITEHARVEST, LLC; JULIAN EGGEBRECHT; HOLGER SCHMIDT; THOMAS ENGEL; and DOES 1-100,<br><br>Defendants. | Case No: C 10-04927 SBA<br><br>**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Docket 97 |

Plaintiffs,[1] individually and on behalf of all others similarly situated, bring the instant action against Defendants to recover unpaid wages and other benefits under state and federal law. The parties are presently before the Court on Plaintiffs' motion for partial summary judgment against the individual Defendants[2] on their minimum wage claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206. Dkt. 97. The individual Defendants oppose the motion. Dkt. 113. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Plaintiffs' motion for partial summary judgment, for the reasons stated below. The Court,

---

[1] The named Plaintiffs are Jesse Helton ("Helton"), Alisha Piccirillo ("Piccirillo"), and Chad Lowe ("Lowe") (collectively, "Plaintiffs").

[2] The individual Defendants are Julian Eggebrecht ("Eggebrecht"), Holger Schmidt ("Schmidt"), and Thomas Engel ("Engel") (collectively, "individual Defendants").

in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.     BACKGROUND

Because the parties are familiar with the facts of this case, the Court will only recite those facts which are relevant to the resolution of the instant motion.  The Court finds that the following facts are undisputed.

Plaintiffs are former employees of Factor 5, a software and video game developer. Helton was employed by Factor 5 as a Senior/Lead Programmer from on or about May 15, 2006 until on or about December 19, 2008.  Lowe was employed by Factor 5 as a Producer from on or about December 24, 2005 until on or about December 19, 2008.  Piccirillo was employed by Factor 5 as a Senior Technical Artist from on or about August 2002 until on or about December 19, 2008.  The individual Defendants founded Factor 5 and were the owners, directors, and officers of Factor 5 at all relevant times.

On November 1, 2008, Factor 5 stopped paying its employees earned wages.  On December 19, 2008, Factor 5 terminated all of its employees.  Factor 5 did not pay Plaintiffs for the work they performed for Factor 5 from November 1, 2008 to December 19, 2008.

On January 21, 2009, Plaintiffs filed a class action complaint in the Superior Court of California, County of Marin, to recover earned wages and other benefits due under California law.  On October 13, 2010, Plaintiffs filed a first amended complaint ("FAC"), adding the individual Defendants as well as claims under the FLSA.  On October 29, 2010, the individual Defendants removed the action to this Court on the basis of federal question jurisdiction.  The parties are presently before the Court on Plaintiffs' motion for partial summary judgment against the individual Defendants on their minimum wage claim under the FLSA.

## II.    LEGAL STANDARD

"A party may move for summary judgment, identifying each claim . . . or the part of each claim . . . on which summary judgment is sought.  The court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. Id.

The moving party's burden on summary judgment depends on whether it bears the burden of proof at trial with respect to the claim or defense at issue. When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000). In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case. Id. However, if the nonmoving party bears the burden of proof on an issue at trial, such as an affirmative defense, the moving party need not produce affirmative evidence of an absence of fact to satisfy its burden. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may simply point to the absence of evidence to support the nonmoving party's case. Id.

Once the moving party has met its burden, the burden then shifts to the nonmoving party to designate specific facts showing a genuine issue for trial. Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256 ("a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1) (A).

To carry its burden, the nonmoving party must show more than the mere existence of a scintilla of evidence, Anderson, 477 U.S. at 252, and "do more than simply show that

there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In fact, the nonmoving party must come forward with affirmative evidence from which a jury could reasonably render a verdict in the nonmoving party's favor.  Anderson, 477 U.S. at 252, 257.  In determining whether a jury could reasonably render a verdict in the nonmoving party's favor, the court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  Id. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Dias v. Nationwide Life Ins. Co., 700 F.Supp.2d 1204, 1214 (E.D. Cal. 2010).

To establish a genuine dispute of material fact, a Plaintiff must present affirmative evidence; bald assertions that genuine issues of material fact exist are insufficient.  Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); see also F.T.C. v. Stefanchik, 559 F.3d 924 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment.").  Further, evidence that is merely colorable or that is not significantly probative, is not sufficient to withstand a motion for summary judgment.  Anderson, 477 U.S. at 249-250 (citations omitted).  "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007); see also Nelson v. Pima Community College, 83 F.3d 1075, 1081-1182 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment").  If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

### III. DISCUSSION

The FLSA requires employers to pay employees certain minimum hourly wages.  29 U.S.C. § 206(a).  The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for

commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce," a minimum wage. Id.  Any employer who violates § 206 "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).

In the instant motion, Plaintiffs move for summary judgment on their FLSA minimum wage claim against the individual Defendants on the ground that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law because the individual Defendants admit that they (1) knew that Plaintiffs were working for Factor 5 without pay in November and December 2008, and (2) did not pay Plaintiffs for work performed during those months.  Pls.' Mot. at 8-12.  In addition, Plaintiffs contend that they are entitled to an award of liquidated damages in an amount equal to their unpaid wages because the individual Defendants did not act in "good faith" in failing to comply with the FLSA's minimum wage requirements.  Id. at 12-15.

In response, the individual Defendants concede that they were the owners and managers of Factor 5, and that they are "employers" for purposes of liability under the FLSA.[3]  Defs.' Opp. at 1.  The individual Defendants also concede that they did not pay Plaintiffs for the work they performed for Factor 5 between November 1, 2008 and December 19, 2008.  Id.  In other words, the individual Defendants admit that they violated the FLSA's minimum wage requirements.  However, they oppose Plaintiff's motion on four grounds.  First, the individual Defendants argue that their tender of a check to Plaintiffs for the full amount of their minimum wages, plus interest, moots Plaintiffs' minimum wage claim under Genesis Healthcare Corp. v. Symczyk, 133 S.Ct. 1523 (2013).  Id. at 9-10.  Second, the individual Defendants argue that the Plaintiffs are exempt from the FLSA's minimum wage requirements because Plaintiffs qualify as managers and/or creative professionals.  Id. at 8-9.  Third, the individual Defendants argue that Plaintiffs are not

---

[3] See Boucher v. Shaw, 572 F.3d 1087, 1091 (9th Cir. 2007) ("Where an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability.").

entitled to an award of liquidated damages because they acted with "good faith" within the meaning of the FLSA. Id. at 10-14. Fourth, the individual Defendants argue that there are triable issues of material fact that preclude summary judgment on the issue of whether Plaintiffs are entitled to an award of liquidated damages. Id. at 6-8. The individual Defendants' arguments are addressed in turn below.

### A.     Mootness

The individual Defendants contend that partial summary judgment is inappropriate because Plaintiffs' FLSA minimum wage claim is moot under Genesis Healthcare as Plaintiffs refused to accept a Rule 68[4] offer that would have fully satisfied their claim. Defs.' Mot. at 9-10. The Court rejects this argument. Even assuming the individual Defendants made such an offer, the Supreme Court did not address this issue in Genesis Healthcare. See Genesis Healthcare, 133 S.Ct. at 1528-1529 ("While the Courts of Appeals disagree whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot, we do not reach this question, or resolve the split, because the issue is not properly before us.") (footnote omitted)). Moreover, the Ninth Circuit has recently held that an unaccepted Rule 68 offer that would have fully satisfied a plaintiff's claim does not render that claim moot. See Diaz v. First American Home Buyers Protection Corp., 732 F.3d 948, 954-955 (9th Cir. 2013) (noting that once a Rule 68 offer lapses, it is "by its own terms and under Rule 68, a legal nullity").

### B.     FLSA Exemption Defense

The individual Defendants contend that Plaintiffs' motion for partial summary judgment should be denied because Plaintiffs are exempt employees that are not subject to the FLSA's minimum wage requirements as they were "creative professionals" and/or managers. Defs.' Mot. at 8-9.

---

[4] Rule 68 provides that "[a]t least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment." Fed.R.Civ.P. 68(a).

The FLSA requires employers to pay its employees a certain minimum wage for any hours worked. 29 U.S.C. § 206(a). However, the FLSA exempts from the statute's protection employees who are "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The FLSA grants the Secretary of Labor broad authority to promulgate regulations to define and delimit the scope of exemptions. Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1112 (9th Cir. 2001).

An exempt "professional employee" is an employee "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week . . . [w]hose "primary duty is the performance of work . . . "[r]equiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." 29 C.F.R. § 541.300(a). "The exemption does not apply to work which can be produced by a person with general manual or intellectual ability and training." 29 C.F.R. § 541.302(a). "[T]he work performed must be 'in a recognized field of artistic or creative endeavor.' This includes such fields as music, writing, acting and the graphic arts." 29 C.F.R. § 541.302(b). "[E]xemption as a creative professional depends on the extent of the invention, imagination, originality or talent exercised by the employee. Determination of exempt creative professional status, therefore, must be made on a case-by-case basis." 29 C.F.R. § 541.302(c).[5]

An exempt "executive employee" is an employee:

(1) Compensated on a salary basis at a rate of not less than $455 per week . . ., exclusive of board, lodging or other facilities;

---

[5] 29 U.S.C. § 541.302(c) provides:

This requirement generally is met by actors, musicians, composers, conductors, and soloists; painters who at most are given the subject matter of their painting; cartoonists who are merely told the title or underlying concept of a cartoon and must rely on their own creative ability to express the concept; essayists, novelists, short-story writers and screen-play writers who choose their own subjects and hand in a finished piece of work to their employers (the majority of such persons are, of course, not employees but self-employed); and persons holding the more responsible writing positions in advertising agencies. This requirement generally is not met by a person who is employed as a copyist, as an 'animator' of motion-picture cartoons, or as a retoucher of photographs, since such work is not properly described as creative in character.

> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a)(1)-(4).  In order to be an exempt executive employee, an employee's primary duty "must be the performance of exempt work."  See 29 C.F.R. § 541.700(a).

An employee's "primary" duty is "the principal, main, major or most important duty that the employee performs.  Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."[6]  29 C.F.R. § 541.700(a).  "The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee."  29 C.F.R. § 541.700(b).  "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement" and will be exempt from the FLSA's protections.  Id.  "A job title alone is insufficient to establish the exempt status of an employee.  The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."  29 C.F.R. § 541.2.

FLSA exemptions are construed narrowly against the employer who seeks to assert them.  Cleveland v. City of Los Angeles, 420 F.3d 981, 988 (9th Cir. 2005) (noting that the FLSA is construed liberally in favor of employees).  Further, an FLSA exemption will not

---

[6] "Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  29 C.F.R. § 541.700(a).

- 8 -

be found except in contexts "plainly and unmistakably" within the given exemption's terms and "spirit." Id.  An employer has the burden of proving that an employee fits "plainly and unmistakably" within the terms and spirit of an FLSA exemption. Id.; see Corning Glass Works v. Brennan, 417 U.S. 188, 196-197 (1974) ("[A]n exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof."); Hertz v. Woodbury County, Iowa, 566 F.3d 775, 783 (8th Cir. 2009) ("[T]he application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof.").

As an initial matter, Plaintiffs argue that the individual Defendants have waived their FLSA exemption defense because it was not asserted in their answer to the FAC, and because they will be prejudiced if the individual Defendants are allowed to assert such a defense at this late stage of the litigation.  While the general rule is that a defendant should assert affirmative defenses in its first responsive pleading, Fed.R.Civ.P. 8(c), the Ninth Circuit has "liberalized" the requirement that a defendant must raise affirmative defenses in their initial responsive pleading.  Magana v. Com. of the Northern Mariana Islands, 107 F.3d 1436, 1446 (9th Cir. 1997); see also Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1023 (9th Cir. 2010).  In the Ninth Circuit, a defendant "may raise an affirmative defense for the first time in a motion for summary judgment only if the delay does not prejudice the plaintiff."  Magana, 107 F.3d at 1446 (holding the district court erred in granting summary judgment for defendants without determining whether their delay in raising the FLSA exemption for employees "employed in a bona fide executive, administrative, or professional capacity" prejudiced the plaintiff).

Here, the individual Defendants attempt to assert an FLSA exemption defense for the first time approximately two years and nine months after the complaint was amended to assert FLSA claims.  The Court finds that the individual Defendants' unexplained, inordinate delay in raising this defense is prejudicial because Plaintiffs had no opportunity to conduct discovery on this issue.  The individual Defendants could have raised their FLSA exemption defense long before the instant motion was filed in their answer to the

1. FAC or in a motion to dismiss or motion for summary judgment. Instead, they waited until
2. this late juncture to provide Plaintiffs notice of the defense. The individual Defendants
3. offer no justification for their failure to raise the defense in a timely manner. Under these
4. circumstances, the Court finds that the individual Defendants are prohibited from asserting
5. an FLSA exemption defense. See Ulin v. Lovell's Antique Gallery, 2010 WL 3768012, at
6. *13 (N.D. Cal. 2010) (prohibiting defendants from raising FLSA exemption defense for the
7. first time at the summary judgment stage).
8.     Moreover, even if the individual Defendants were not prohibited from asserting an
9. FLSA exemption defense, they have failed to sustain their burden to establish a genuine
10. issue of material fact for trial. The only evidence relied upon by the individual Defendants
11. in support of this defense are statements made in the declarations submitted by Plaintiffs in
12. connection with the instant motion. See Defs.' Mot. at 9. Specifically, the individual
13. Defendants argue that Helton is an exempt "creative professional" and/or "executive"
14. employee because he avers that he "was responsible for writing code to implement game
15. features, as well as working with designers and other content creators to define features,
16. requirements, and workflow," citing Helton Decl. ¶ 2. Additionally, the individual
17. Defendants argue that Lowe is an exempt "creative professional" and/or "executive"
18. employee because he avers that, "[a]s a Producer, [he] was responsible for overall project
19. management for Defendants' game title/project, including supervising and tracking
20. assignments," citing Lowe Decl. ¶ 2. Finally, the individual Defendants argue that
21. Piccirillo is an exempt "creative professional" because she avers that, "as a Senior
22. Technical Artist," she "worked with designers, programmers, and artists, to ensure
23. technical integrity of game assets being produced by Defendants," citing Piccirillo Decl. ¶
24. 2. The individual Defendants do not proffer any other evidence or argument supporting
25. their FLSA exemption defense.
26.     The Court finds that the individual Defendants' showing is wholly inadequate to
27. withstand Plaintiffs' motion for partial summary judgment. The individual Defendants
28. have not come forward with affirmative evidence from which a jury could reasonably

1 render a verdict in their favor on their FLSA exemption defense.  See Anderson, 477 U.S.
2 at 252, 257.  The individual Defendants did not cite any evidence establishing that the
3 Plaintiffs were compensated on a salary basis at a rate of not less than $455 per week.
4 Further, they failed to cite any evidence establishing the specific job duties of the Plaintiffs
5 or the amount of time that the Plaintiffs spent on their respective duties.  Nor did the
6 individual Defendants attempt to explain how each Plaintiff's job duties satisfy the various
7 requirements of the FLSA exemptions they invoke.  Instead, the individual Defendants
8 simply rely on the vague and generalized job descriptions provided by the Plaintiffs in their
9 respective declarations, which is insufficient to survive summary judgment.  In re Brazier
10 Forest Prods., Inc., 921 F.2d 221, 223 (9th Cir. 1990) (Where the nonmoving party bears
11 the burden of proof on an issue at trial, such as an affirmative defense, the nonmoving party
12 must make a sufficient showing to establish the existence of evidence as to all elements
13 essential to its defense to avoid summary judgment); see Ale v. Tennessee Valley
14 Authority, 269 F.3d 680, 689 (6th Cir. 2001) ("[T]he determination of whether an
15 employee is exempt is an inquiry that is based on the particular facts of his employment and
16 not general descriptions."); 29 C.F.R. § 541.2 ("The exempt or nonexempt status of any
17 particular employee must be determined on the basis of whether the employee's salary and
18 duties meet the requirements of the regulations in this part.").

### C. Good Faith Defense

Plaintiffs contend that they are entitled to an award of liquidated damages in an amount equal to their unpaid wages under § 216(b).  Pls.' Mot. at 12-15.  The individual Defendants disagree, arguing that they have a "good faith" defense to Plaintiffs' claim for liquidated damages.  Defs.' Opp. at 10-14.  According to the individual Defendants, they acted in good faith with respect to the FLSA's minimum wage requirements because they reasonably relied upon their understanding of the advice of employment counsel and

"human resource experts"[7] in allowing Factor 5 employees to work in November and December 2008 when they believed that Factor 5 was about to enter into a new publishing contract for one of its video games, which would have paid all outstanding wages and would have made the survival of the company possible. Id.; see Eggebrecht Decl. ¶ 7; Engel Decl. ¶ 7; Schmidt Decl. ¶ 7.

Where an employer fails to pay minimum wages in violation of the FLSA, the employer is liable to the employee for an additional amount of damages equal to the minimum wages owed as liquidated damages. 29 U.S.C. § 216(b). Liquidated damages are not a penalty, but are compensation to the employee. Chao v. A-One Medical Services, Inc., 346 F.3d 908, 920 (9th Cir. 2003). "If the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . the court may, in its sound discretion, award no liquidated damages or" award a lessor amount. 29 U.S.C. § 260. "[T]he employer has the burden of establishing subjective and objective good faith in its violation of the FLSA." Local 246 Util. Workers Union v. S. Cal. Edison Co., 83 F.3d 292, 297 (9th Cir. 1996). The employer has the burden to establish that it had "an honest intention to ascertain and follow the dictates of the FLSA, and that it had reasonable grounds for believing that its conduct complied with the FLSA." Id. at 298.

" 'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to

---

[7] The individual Defendants provide no details regarding the specific advice they received from "human resource experts." Instead, they simply aver that the "human resource experts" advised them that it was "lawful and appropriate for them to continue to operate Factor 5, Inc. as a business, even without funds on hand to pay employees, given the imminent publishing contract." See Eggebrecht Decl. ¶ 7; Engel Decl. ¶ 7; Schmidt Decl. ¶ 7, Dkt. 116. Other than the individual Defendants' conclusory and self-serving declarations, the individual Defendants did not proffer any evidence regarding the advice they received from "human resource experts." This showing is insufficient to create a genuine issue of material fact for trial. See Soremekun, 509 F.3d at 984; see also F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

1   ascertain the dictates of the FLSA and then move to comply with them." Reich v. Southern
2   New England Telecommunications Corp., 121 F.3d 58, 71 (2d Cir. 1997).  "To satisfy §
3   260, a FLSA-liable employer bears the 'difficult' burden of proving both subjective good
4   faith and objective reasonableness, 'with double damages being the norm and single
5   damages the exception.' " Alvarez v. IBP, Inc., 339 F.3d 894, 910 (9th Cir. 2003).  Where
6   the employer fails to carry that burden, liquidated damages are mandatory.  Id.

7         Here, the individual Defendants have failed to carry their burden to create a triable
8   issue regarding their good faith defense.  They have not come forward with affirmative
9   evidence from which a jury could reasonably render a verdict in their favor on this issue.
10  Anderson, 477 U.S. at 252, 257.  The individual Defendants did not proffer any evidence
11  establishing that they had an honest intention to ascertain and follow the dictates of the
12  FLSA, and that they had objectively reasonable grounds for believing that their conduct
13  complied with the FLSA.

14        It is undisputed that the individual Defendants were advised by employment
15  counsel[8] that Factor 5 had exposure to liability for failing to pay wages when due and
16  owing, and that Factor 5 would be subject to substantial penalties under California law, in
17  addition to wages and accrued vacation pay owed, if they terminated their employees
18  without paying money due and owing.[9]  See Smith Decl., Exh. F ("Daijogo Dep.") at 21:5-
19  22:6; 69:9-13; 70:12-21, Dkt. 101.  Based on this advice, the individual Defendants
20  determined that it would be "legally preferable" to pay their employees when funds became
21  available rather than terminate them immediately.  Defs.' Opp. at 13.  According to the

---

[8] The evidence proffered by Plaintiffs shows that Eggebrecht only spoke with employment counsel for 10 minutes regarding the potential liability arising out of Factor 5's inability to pay its employees.  See Daijogo Dep. at 21:1-18.

[9] The individual Defendants argue that they acted in good faith because they were never advised that they had any obligation under the FLSA which would render them personally liable for minimum wages.  However, the individual Defendants provide no authority holding that such circumstances constitute good faith.  Indeed, good faith in the context of the FLSA requires more than ignorance of the prevailing law or uncertainty about its development; it requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them. Reich, 121 F.3d at 71.

1  individual Defendants, they "understood" that they had been advised not to terminate their
2  employees while there was still an expectation that "funding would come through to pay
3  the payroll." Id. at 12.

4      While courts have held that the advice of counsel can in some circumstances support
5  a good faith defense to liquidated damages,[10] the individual Defendants' have failed to
6  demonstrate that they had reasonable grounds for believing that their conduct complied
7  with the FLSA based on the advice of counsel.  As noted above, the individual Defendants
8  were advised by employment counsel that it was unlawful to permit employees to work
9  without paying them their earned wages.  Further, there is no evidence that the individual
10 Defendants took steps to ascertain the dictates of the FLSA and then moved to comply with
11 the FLSA.  The individual Defendants have not cited any authority holding that a good faith
12 defense is applicable under the circumstances.  Accordingly, the Court finds that Plaintiffs
13 are entitled to recover liquidated damages in an amount equal to the unpaid minimum
14 wages due under the FLSA.

15     **D.**    **Genuine Issue of Material Fact for Trial**

16     The individual Defendants contend that partial summary judgment is inappropriate
17 because Plaintiffs have failed to demonstrate that there is no genuine issue of material fact
18 for trial regarding their entitlement to liquidated damages.  Defs.' Opp. at 6-8.  Specifically,
19 the individual Defendants argue that there is a triable issue "as to what legal advice the
20 individual defendants were given as to continuing to permit [Factor 5] employees to
21 continue working without pay." Id. at 7.  According to the individual Defendants, the
22 deposition testimony of their former employment counsel, Daijogo, is contradictory
23 because while she testified that she never advised "anybody at Factor 5 that it was
24 appropriate to continue to permit employees to work for no wages," she also testified that
25 she never advised "anybody at Factor 5 that it was *unlawful* to continue to permit

---

[10] See, e.g., Featsent v. City of Youngstown, 70 F.3d 900, 906-907 (6th Cir.1995) (collecting cases on advice of counsel as grounds for denying liquidated damages).

- 14 -

employees to work without being paid their earned wages." Id. at 7-8 (emphasis added). The Court rejects this argument.

A review of Daijogo's deposition testimony reveals that the individual Defendants' argument is frivolous. As pointed out by Plaintiffs, Daijogo made several changes to her deposition transcript following her deposition, one of which was to clarify the "contradiction" pointed out by the individual Defendants. After her deposition was taken, Daijogo clarified that she did not advise anybody at Factor 5 that it was *lawful* to continue to permit employees to work without being paid their earned wages. See Smith Supp. Decl., Exh. A, Statement of Changes to Deposition Testimony of Third Party Witness Daijogo & Pedersen, LLP, Dkt. 118-1. Further, Daijogo expressly testified that she informed Factor 5 that it was unlawful to permit employees to continue to work without paying them their earned wages. See Smith Decl., Exh. F at 21:5-22:6; 69:9-13; 70-12-21. Accordingly, the individual Defendants have failed to demonstrate that a genuine issue of material fact exists for trial regarding Plaintiffs' entitlement to liquidated damages.

**E.   Damages**

Plaintiffs contend that they are each entitled to an award of damages in the amount of $3,353.60. Pls.' Mot. at 15. Plaintiffs reach this figure by first multiplying the federal minimum wage rate in November and December 2008 by the days and hours they worked for Factor 5 in those months: $6.55 (minimum wage)[11] x 32 (days) x 8 (hours per day) = $1,676.80. Id. Next, Plaintiffs double the amount of their unpaid wages to account for liquidated damages: $1,676.80 x 2 = $3,353.60. Id. The individual Defendants do not dispute Plaintiffs' damages calculations. Accordingly, because it is undisputed that Plaintiffs worked 32 days in November and December 2008 for 8 hours a day and were not paid a minimum wage, and because Plaintiffs are entitled to an award of liquidated damages in an amount equal to their unpaid minimum wages due under the FLSA, the

---

[11] 29 U.S.C. § 206(a)(1).

1  Court finds that each Plaintiff is entitled to an award of damages in the amount of
2  $3,353.60 for their FLSA minimum wage claim.

### IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' motion for partial summary judgment on their FLSA minimum wage claim against the individual Defendants is GRANTED. Helton, Piccirillo, and Lowe are each awarded $3,353.60 in damages.

2. This Order terminates Docket 97.

IT IS SO ORDERED.

Dated:  2/10/2014



SAUNDRA BROWN ARMSTRONG
United States District Judge